UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ALBERTA CAMPBELL, on behalf of herself and others similarly situated, ) ) ) | |
| ) | No. 5:20-CV-222-REW |
| Plaintiff, ) ) | |
| v. ) ) | OPINION & ORDER |
| MIDDLE KENTUCKY COMMUNITY ) ACTION PARTNERSHIP, INC., ) ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Alberta Campbell initiated this putative collective action against Defendant Middle Kentucky Community Action Partnership, Inc. ("Middle Kentucky") on behalf of herself and other workers. DE 1 (Complaint). Plaintiff claims violations of state and federal overtime laws.[1] *Id.* at 6–7. Plaintiff now pursues conditional certification of an FLSA collective and seeks authorization of notice to potential members. *See* DE 16 (Motion); DE 17 (Memorandum in Support). Plaintiff's motion—fully briefed, *see* DE 19 (Response), DE 23 (reply)—stands ripe for review.

I.    BACKGROUND

Middle Kentucky is a non-profit that provides services to low-income families in Eastern Kentucky. *See* DE 1 at ¶¶ 7–8. A portion of the services offered includes transportation services; Transportation Drivers, as Middle Kentucky employees, pick up clients and transport them to various locations, including "doctor offices, clinics, and hospitals." *Id.* at ¶ 23. Plaintiff was

---

[1] Specifically, Plaintiff alleges violations of the overtime dictates of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and its Kentucky counterpart KRS 337.010, *et seq.*

1

employed as a Transportation Driver for Middle Kentucky from June 2015 until November 2019. *Id.* at ¶ 10.

Campbell claims that Middle Kentucky did not pay her overtime for any time she worked over forty hours per week. *Id.* at ¶ 27. In lieu of overtime, Campbell claims that Middle Kentucky required her to "bank" her overtime hours to be used for vacation time in the future. *Id.* at ¶ 28. Similarly, Campbell claims that the company miscategorized her as an overtime exempt worker while her job duties actually "did not include exempt work." *Id.* at ¶¶ 20, 24–25. Campbell seeks payment and additional liquidated damages for all unpaid overtime wages under 29 U.S.C § 216, DE 1 at ¶¶ 36–42 (Count I), and under KRS 337.285, DE 1 at ¶¶ 43–49 (Count II).

Campbell pleads that her FLSA[2] claim is "typical of the experiences of Class Members[,]" with respect to Plaintiff's pay and job duties. DE 1 at ¶¶ 58–59. She claims that Middle Kentucky "has a common pay policy and/or pay practice" of mischaracterizing Transportation Drivers as exempt and then failing to pay them the proper overtime wage. *Id.* at ¶¶ 19–20, 29–30. Campbell, here, seeks conditional certification of a collective defined as:

> [C]urrent and former Transportation Drivers who worked for Defendant from three years prior to the filing of this lawsuit to the present[.]

In support, Plaintiff attaches her own declaration (DE 17-3 at 1–3), as well as a declaration of former Middle Kentucky Transportation Driver Robert Back (DE 17-3 at 4–5) and a declaration of former Middle Kentucky Transportation Driver Jaimie Gross (DE 17-3 at 6–8).[3] Generally, the DE 17-3-document suite coincides with and lends support to Campbell's pleaded allegations, in particular as to similarity.

---

[2] To be clear, Campbell has not moved for and the Court does not here address any class or collective treatment of her Kentucky wage claim. Indeed, Campbell seeks to drop the state class vehicle by amendment. The Court will address DE 18 separately.

[3] Hereinafter, "Campbell Decl., Back Decl., Gross Decl."

## II. CLASS CERTIFICATION STANDARD

The Sixth Circuit outlines the applicable, bifurcated certification framework:

> Section 216(b) of the FLSA allows similarly situated employees to recover compensation from their employer in "opt-in" class action litigation. 29 U.S.C. § 216(b). *See also Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded. *Comer*, 454 F.3d at 546. District courts use a "fairly lenient standard" that "typically results in conditional certification of a representative class" when determining whether plaintiffs are similarly situated during the first stage of the class certification process. *Id.* at 547 (citation and internal quotation marks omitted). . . .
>
> At the second stage of the class certification process, district courts apply a "stricter standard" and more closely examine "the question of whether particular members of the class are, in fact, similarly situated." *Id.* Lead plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." [*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).]

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Campbell, here, seeks only notice-stage certification. This "conditional and by no means final" certification requires only a "modest factual showing" that the plaintiff's position is "similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–57 (citations omitted). To be sure, Defendant strenuously advocates for a more demanding standard. *See* DE 19 at 1–3. Defendant points the Court to various district court decisions that have, on the facts and postures presented in those cases, "held the moving party to 'a higher standard of proof.'" *Id.* at 2 (quoting *Anderson v. McCarthy Burges & Wolff, Inc.*, No. 1:14-CV-617, 2015 WL 224936, at *2–3 (N.D. Ohio Jan. 15, 2015)) (collecting cases). This Court, for several reasons, finds the Sixth Circuit's published endorsement of the lenient notice-stage standard controlling.

First, Defendant cites to no Circuit precedent approving a modified or "modest plus" rubric at this stage of discovery. True, the parties have engaged in some written discovery, but no

controlling law indicates that the parties have crossed over a delineated threshold requiring the Court to place higher standards on Plaintiff here. Second, as the Court of Appeals often explains:

> "Congress passed the FLSA with broad remedial intent" to address "unfair method[s] of competition in commerce" that cause "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 202(a). The provisions of the statute are "remedial and humanitarian in purpose," and "must not be interpreted or applied in a narrow, grudging manner." *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002)[.]

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 396–97 (6th Cir. 2017) (explaining that "Courts typically bifurcate certification" and that "a more exacting standard" is appropriate "[o]nce discovery has concluded"), *cert denied*, 138 S. Ct. 980 (2018). The *Comer* standard is teleologically consistent with the FLSA and the specific *notice*[4] goal of initial certification. Third, the heightened burden at the second stage renders fleeting any minimal prejudice arising from an initial certification of a class that a court, under later more stringent review, finds dissimilarly situated.[5] *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (discussing "stricter standard" applicable to final certification). The Court, at this stage, opts for the Circuit-sanctioned route and applies the "fairly lenient standard" that "typically results in conditional certification[.]" *Comer*, 454 F.3d at

---

[4] In contrast to a Rule 23(b)(1) or (b)(2) class action, for which participation, absent opt-out, is presumed for individuals within the defined class, the FLSA requires putative plaintiffs to opt-in to the proposed collective. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[5] The Court notes that Defendant's challenge based upon temporal location in or progress of discovery imports numerous uncertainties into the traditional bipartite certification framework. Relevant questions might include: How much discovery is sufficient to elevate the initial bar? [Here, the timing may be past the *initial* stages, but the parties have not conducted extensive discovery.] Precisely how much more "exacting" should the intermediate review be? [Surely, absent *full* discovery, and absent discovery relating to certification (here, largely absent), Plaintiff cannot be put to a Rule 56 style burden.] The Court sees too much incertitude, and little attendant benefit, in Defendant's approach.

546; *see also Davis v. Omincare, Inc.*, No. 5:18-CV-142-REW, 2019 WL 6499127, at *3 (E.D. Ky. Dec. 3, 2019) (rejecting modest plus standard after parties had initiated discovery); *Given v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2018 WL 925996, at *2 ) (M.D. Pa. Feb. 16, 2018) (finding "application of a higher step-one burden . . . inappropriate"); *Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 29 (D.D.C. 2016) (Finding no basis for heightened standard "in the text of the FLSA or in the" related precedent); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 766 (N.D. Ohio 2015) (rejecting "'modest plus' standard of review").

Accordingly, to justify initial certification, Campbell must offer but a "modest factual showing" that "[her] position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 547 (citation and quotation marks omitted).[6] Campbell clears the moderate bar.

## III. CERTIFICATION

### A. Generally

The FLSA does not explicitly define "similarly situated." 29 U.S.C. § 216(b). Textually and logically, the relevant similitude for proposed collective members must be with respect to "liability prescribed in the" FLSA. *Id.* That is, Campbell and the putative class members need be "similarly situated" regarding federal wage claims against Defendant. As a baseline, then, the Court begins with the FLSA claims, *i.e.*, how Campbell is, as to Defendant's alleged FLSA liability, "situated."

---

[6] Defendant's proposed numerosity requirement is misplaced. In an FLSA § 216(b) collective action, "the requirements of Rule 23 do not apply and no showing of numerosity, commonality, typicality and adequacy of representation need to be made." *Vengurlekar v. Silverline Tech., Ltd.*, 220 F.R.D. 222, 229 (S.D.N.Y. 2003).

The crux of Plaintiff's theory is that Middle Kentucky "had/has a company-wide policy of failing to pay certain non-exempt employees proper overtime compensation for all of their overtime hours worked." DE 1 at ¶ 29. By declaration, Plaintiff avers, in relevant part, that she: (1) was forced to "'bank' overtime to be used later as vacation time" but was never paid the overtime wage; (2) estimated that she "worked at least 2.5 hours of overtime each week"; and (3) was told that "Middle Kentucky 'doesn't pay overtime.'" Campbell Aff. at ¶¶ 6–9. As to the proposed class, Campbell generally reports, via hearsay,[7] that other drivers were "were paid in the same way and did not receive overtime compensation even when they worked more than forty hours in a workweek." Campbell Aff. at ¶ 10. The sworn statements of two other former Middle Kentucky workers uniformly support Campbell's contentions as to relevant company pay policies and underpayment.[8]

Plaintiff, here, needed a modest showing of similarity, not conclusive proof of identity. The Court finds that Campbell, under the applicable lenient standard, has shown sufficient similarity between herself and other Middle Kentucky Transportation Drivers to justify certification of the collective.

One final note. Defendant states, DE 19 at 5, and Plaintiff agrees, DE 23 at 5, that the initial collective definition sought improperly pegged the time period to three years prior to Plaintiff's

---

[7] "[T]he majority of courts within the Sixth Circuit 'have held that plaintiff's evidence on a motion for conditional certification need not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b).'" *Waggoner*, 110 F. Supp. 3d at 770 n.6 (conditionally certifying a collective action even though plaintiffs' "generalized statements about the job duties" of potential opt-in plaintiffs and conversations described "in the broadest of terms" were "quite thin").
*Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *4 (E.D. Ky. Mar. 14, 2017).
[8] *See, e.g.*, Back Decl. at ¶ 7; Gross Decl. at ¶¶ 7–14.

Complaint. In reply, Plaintiff requests that the definition be amended to include a time period "three years prior to the Court's order granting conditional certification[.]" DE 23 at 5. Consequently, the Court limits certification to those current or former Transportation Drivers that have potentially timely claims, *i.e.*, Middle Kentucky Drivers that worked for or received a paycheck from Defendant at a time on or after May 20, 2018. *See Williams*, 2017 WL 987452, at *6 (limiting notice authorization to account for limitations period); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015) (limiting proposed class to "employees who worked for [Defendant] three years prior to the date of this Decision"). This limitation ensures that the certified class be limited to similarly situated former Drivers and that notice does not go to individuals lacking a viable claim.

### B. Defendant's Other Contentions

At this *conditional* certification stage, courts typically decline to "consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2019 WL 5257051, at *1 (N.D. Ohio Oct. 17, 2019) (quoting *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). When, as here, a plaintiff offers a modest showing that the proposed collective's claims are "unified by common theories of defendants' statutory violations," the fact that the "proofs of [such] theories are inevitably individualized and distinct" presents no obstacle to initial certification. *Monroe*, 860 F.3d at 398 (quoting *O'Brien*, 575 F.3d at 584–85). Nor does "the prospect of individual defenses . . . defeat authorization of a collective action." *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 5:06-CV-299-JBC, 2007 WL 293865, at *7 (E.D. Ky. Jan. 26, 2007) (citation and quotation marks omitted). The balance of Defendant's arguments against certification 'are of the sort that are appropriate for consideration during the second-stage, and not during the

7

initial 'notice' stage." *Id.* Thus, the Court, for now, declines any limitation of the proposed collective based on such challenges.

### C. Certification Sub-Conclusion

For these reasons, the Court initially certifies, and provisionally authorizes notice to a collective comprised of:

> All current and former Transportation Drivers who worked for Defendant and who worked for or received their last paycheck from Defendant at a time on or after May 20, 2018.

Given the authorization and preliminary certification, "the Court must determine if the proposed notice is fair and accurate to properly inform prospective plaintiffs of the action." *Perez v. El Torazo Mexican Rest., Inc.*, No. 3:16-CV-00545-GNS, 2017 WL 6344624, at *3 (W.D. Ky. Dec. 12, 2017).

## IV. NOTICE

> The FLSA "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible and not otherwise contrary to the statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-LaRoche v. Sperling*, [110 S. Ct. 482, 486] (1989) (discussing 29 U.S.C. § 216(b), the FLSA's enforcement provision, as incorporated into the ADEA). Thus, "district courts have discretion, in appropriate cases, to implement 29 U.S.C. 216(b) by facilitating notice to potential plaintiffs." *Id.* "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.*

*Williams*, 2017 WL 987452, at *5. In its notice-facilitation role, the Court resolves disputes regarding notice content, and "ensure[s] that it is timely, accurate, and informative." *Hoffmann-La Roche*, 110 S. Ct. at 487. Plaintiff proposes a notice plan. DE 17 at 18–19; *see also* DE 17-1 (Proposed Notice). Defendant raises multiple objections. *See* DE 19 at 6–9. The Court finds as follows:

## A. Form

First—The notice should include, at bullet point 2, the proposed language that Defendant sought in good faith to comply with the requirements of the FLSA. *See Heaps v. Safelite Solutions, LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011). "[T]he Court doubts that the inclusion or exclusion of the phrase 'in good faith' would sway the average layperson one direction or the other under these circumstances." *Ganci v. MBF Inspection Srvs., Inc.*, Case No.: 2:15-cv-2959, 2016 WL 5104891, at *5 (S.D. Ohio Sept. 20, 2016). Regardless, Plaintiff does not oppose such language. *See* DE 23 at 7.

Second—Plaintiff must *accurately* identify potential obligations attending an opt-in choice. The Court finds an amendment necessary to ensure the form is sufficiently "accurate" for putative plaintiffs to "make informed decisions about whether to participate[,]" *Hoffman-La Roche*, 110 S. Ct. at 486–87. Thus, the notice should include a statement advising: If you do not prevail on your claim, court costs and expenses could possibly be assessed against you.[9] The statement may be appropriately placed in the box describing the effect of joining suit. DE 17-1 at 2.

Third—The notice should include conspicuous language that opt-in members may seek their own counsel as an alternative to authorizing Plaintiff's counsel to represent them. *Heaps*, 2011 WL 1325207, at *9 ("Informing potential plaintiffs of their right to [choose] their own

---

[9] *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D.W. Va. 2012) (citation and quotation marks omitted). The Court acknowledges the split among trial courts on the propriety of cost-assessment warnings. *See id.* at 374–75. However, the Court finds that the "clearly possible" and "not merely theoretical" risk necessitates fair warning. *Creten-Miller v. Westlake Hardware, Inc.*, No. 08–2351, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (collecting cases); *see Frye*, 507 F. App'x at 508 (affirming $55,401.63 cost award to FLSA collective Defendant). *But see id.* ("[T]he court reasonably declined to apportion the costs associated with decertification among the opt-in plaintiffs, given that those individuals were not notified that they may be responsible for defense costs and did not consent to such an apportionment.").

counsel is an appropriate [notice] element [.]") (collecting cases). Plaintiff shall amend the notice as she suggested in reply. DE 23 at 9.

Fourth—The notice should be amended to remove the bold emphasis on the anti-retaliation paragraph. *See Ganci v. MBF Inspection Services, Inc.*, Case No.: 2:15-cv-2959, 2016 WL 5104891, at *7 (S.D. Ohio Sept. 20, 2016) ("The Court finds bolding, underlining, italicizing or other emphases to be unhelpful and potentially prejudicial.") Plaintiff states that she is unsure how the language would "not have the same effect if written in regular type." DE 23 at 9. To avoid the potential for any prejudice, the Court finds that maintaining the language, but reducing the emphasis, is the best course. The content itself is proper.

The Court finds no merit in the balance of Defendant's contentions regarding the notice's form. In managing notice, the Court's discretion extends to "any matter not inconsistent with" federal or local rules, *Hoffmann-La Roche*, 110 S. Ct. at 487 (quoting Fed. R. Civ. P. 83), though it must "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 488. The Court does not find Defendant's contention regarding the caption heading[10] nor the amendment of the notice to address only full-time employees[11] meritorious; these points warrant no modification.

---

[10] It is true that the Court must avoid the appearance of judicial endorsement. *See* [*Hoffman-LaRoche*, 110 S. Ct. at 488]. However, the form notice accomplishes this objective by including a sufficient disclaimer statement. The use of the caption is important so that readers will not confuse this notice with junk mail (which is unfortunately abundant). Accordingly, the use of the caption is approved.
*Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 1720615, at *1 (E.D. Mich. May 16, 2012). Here, the disclaimer statements within the notice are sufficient to dissipate any endorsement concerns. *See* DE 17-1 at 1 ("The Court Has Made No Findings as to the Merits of the Case at this Time."); *id.* at 2 ("The Court has not yet decided whether Middle Kentucky has done anything wrong and has not decided whether this case will proceed to trial.").

[11] *See Williams*, 2017 WL 987452, at *6 (declining to set a forty-hours worked limit on collective and finding that "defining the Notice Group in such a way could confuse potential opt-in plaintiffs and deter them from participating in this action").

### B. Opt-in Form

Plaintiff attaches a proposed opt-in form. DE 17-2. Initially, Plaintiff must amend the opt-in form to account for notice accuracy as outlined above. For example, Plaintiff must, at minimum, include as an alternative to the "designat[ion of]" counsel an option for opt-ins to select their own counsel with space for interlineal initialing to reflect an opt-in's choice. Defendant objects to the final sentence of the opt-in form. DE 19 at 9. The form states that "[i]n the event this action gets conditionally certified and then decertified, I authorize Plaintiffs' counsel to re-use this Consent Form to re-file my claims in a separate or related action against Defendant." DE 17-2 at 1. Without any authority, Defendant states that the "language must be omitted as the consent applies only to the present action." DE 19 at 9. The Court sees good reason for opt-in members to specify whether the consent should operate broadly or narrowly.[12] Accordingly, Plaintiff shall amend the opt-in consent to include as an alternative to the broad consent an option for opt-ins to consent only to this action with space for interlineal initialing to reflect an opt-in's choice.

### C. Notice Mechanics

Regarding notice mechanics, Plaintiff requests the following:

(i) Electronic and first class, standard mailing [Plaintiff does not suggest a deadline for notice];

---

[12] The Court was only able to find one case that discussed the scope of consent in the event of decertification. *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012 (11th Cir. 2007). In *Albritton*, counsel obtained opt-in consent forms for a number of opt-in plaintiffs. *Id.* at 1014–15. Subsequently, the district court decertified the collective action. *Id.* at 1015. Counsel then filed two "substantially identical complaints" that consisted of former opt-in plaintiffs of the original action. *Id.* Counsel conceded that they did not procure separate consent forms and argued that the "earlier consents were the only affirmative authorization they had to proceed." *Id.* at 1017. The Eleventh Circuit rejected counsel's argument that the consents could be extended, stating that the consents "specifically referred to that particular lawsuit and only that lawsuit. There was no attempt to request or give a general consent for litigation of the claims in whatever case might be filed." *Id.* at 1018. The court also rejected the opportunity to "rewrite those forms to broaden their scope[.]" *Id.* at 1019. The Court, here, does not see Plaintiff's attempt to mitigate the obstacle in *Albritton* as contrary to law.

11

  (ii)  Posting of the class notice in break rooms and other locations on Defendant's premises;
  (iii)  A 60-day opt-in period following notice mailing; and
  (iv)  A second notice 30 days after the initial notice attempt.

DE 17 at 18–20. Defendants oppose the dual notice request, but do not otherwise object to the proposed mechanics. DE 19 at 10. As to dual notice, the Court takes the middle ground. "[E]fficency favors limited dual notification at the outset." *Williams*, 2017 WL 987452, at *7. The Court will authorize Plaintiff to send the notice and opt-in consent forms to former Transportation Drivers via first class mail and email. "Dual notification is *not* appropriate for current drivers." *Id.* at *8. This is especially true if the Defendant does not object to posting the notice on its premises.

  As for the second-wave mailing, "Plaintiffs have not explained why reminder notices are necessary *in this case*, and in the interest of eliminating the concerns of judicial endorsement detailed above, the Court declines to authorize the issuance of a reminder notice." *Id.* (emphasis added); *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) ("Many courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation.").

### D. Member Identification

  Plaintiff requests that the Court order Defendant to produce contact information (names, addresses, phone numbers, social security numbers, and e-mail addresses) for putative collective members. DE 17 at 17–18. Defendant objects, claiming the request is overly burdensome and unnecessary. DE 19 at 9. Specifically, "it is not necessary to provide e-mail addresses, phone numbers and social security numbers to facilitate notice to the potential plaintiffs." *Id.* at 10. The Court harmonizes the identification sought to the notice mechanics. Thus, Defendant shall produce names, addresses, and e-mail addresses for putative collective members to Plaintiff within 14 days of this Order. For verification purposes, Defendant also shall provide social security numbers,

though the Court ORDERS that Plaintiff's counsel must hold them as confidential and may use them only for purposes of administration of this case.

**V.    CONCLUSION**

For these reasons, the Court **ORDERS** as follows:

1. The Court, to the extent and on the terms stated in this Order, **GRANTS** DE 16 **IN PART** and **CONDITIONALLY CERTIFIES** a collective defined as:

   All current and former Transportation Drivers who worked for Defendant and who worked for or received their last paycheck from Defendant at a time on or after May 20, 2018.

2. To ensure accurate identification of individuals within the defined collective, Defendant **SHALL**, within **14 days**, provide Plaintiff the names, last known addresses, social security numbers, and e-mail addresses of putative class members;

3. Within **14 days** of initial identification, the parties **SHALL** file either: (I) a joint status report attaching an agreed list of notice recipients (redacted, per Fed. R. Civ. P. 5.2, as appropriate), or (II) if the parties are unable to agree, separate reports (not to exceed 5 pages) addressing any unresolved disputes, attaching proposed notice lists, and including any documentation relevant to the disputed recipients;

4. Within **14 days** of this Order, Plaintiff **SHALL**, via Notice of Filing, file a Proposed Notice and Proposed Opt-In Form modified to reflect the Court's findings and directions in this Order. Within **4 days** of such filing, Defendant **SHALL** file either: (I) a notice of non-opposition to the modified proposals, or (II) objections (not to exceed 3 pages) identifying any provision of the revised notice and opt-in form Defendant views as inconsistent with this Order or binding precedent. [To be clear, this is not an invitation for Defendant to rehearse arguments the Court has, here, rejected or

lodge fresh complaints premised on non-binding contrary authority.] Plaintiff **may** respond (subject to a like 3-page limitation) within **3 days** of Defendant's objections, if any;

5. The Court provisionally **AUTHORIZES** notice to the conditionally certified collective under the mechanics approved in this Order. However, the Court withholds final approval of notice mailing pending finalization of the recipient list, opt-in form, and notice content.

This the 20th day of May, 2021.

Signed By:
*Robert E. Wier*
United States District Judge